1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SABRINA SMITH,                          No.  2:15-cv-01293-KJM-KJN

12                  Plaintiff,

13        v.                                 ORDER

14   H.F.D. NO. 55, INC., dba J. CREW, a
     California corporation; and DOES 1 to100,
15   inclusive,

16                  Defendant.

17

18

19            Defendant H.F.D. No. 55, Inc., doing business as J. Crew Factory Stores (J. Crew),

20   moves to compel arbitration of this case filed by a former employee, Sabrina Smith.  It also

21   moves to dismiss Smith's claim under the California Private Attorneys General Act (PAGA),

22   California Labor Code section 2698 *et seq.*, arguing she expressly waived her right to bring that

23   claim.  Smith opposes the motion.  The court held a hearing on September 3, 2015, at which

24   Nicholas Scardigli appeared for Smith and Elizabeth Williams appeared for J. Crew.

25            After the hearing, the Ninth Circuit issued its decision in *Sakkab v. Luxottica*

26   *Retail North America, Inc.*, 803 F.3d 425 (9th Cir. 2015).  Given the direct implication of that

27   opinion on this court's decision here, defendant's motion was held temporarily in abeyance

28

                                           1

1    pending the Ninth Circuit's resolution of the petition for rehearing of *Sakkab* en banc.  That

2    petition was denied in early February.

3           For the reasons described below, the motions are DENIED without prejudice.

4    I.     <u>BACKGROUND</u>

5           J. Crew Factory Stores operates a national business, with employees and stores in

6    thirty-nine states.  Opatowsky Decl. *Id.* ¶ 9, ECF No. 5-15.  Sabrina Smith worked at J. Crew

7    Factory Stores between August 2009 and November 2014, and was always an hourly, non-exempt

8    employee.  *Id.* ¶ 5; Compl. ¶¶ 6, 18.  She started in the Vacaville store as a sales associate and

9    transferred to the Napa Valley store in early 2013, when she was promoted to assistant manager.

10   Opatowsky Decl. ¶ 5; Compl. ¶¶ 6, 9.

11          Smith alleges that during her time at the Vacaville store, and after March 2014 at

12   the Napa Valley store, J. Crew did not allow her to take the rest breaks and meal breaks required

13   by California Labor Law.  Compl. ¶¶ 7, 9–10; *see also* Cal Lab. Code § 226.7; Wage Order

14   7-2001, Cal. Code Regs., tit. 8, § 11070(11), (12).  To complicate matters, according to her

15   complaint, she also sustained a back injury in an off-duty car accident in February 2014.  Compl.

16   ¶ 11.  Despite her repeated requests and J. Crew's knowledge of her injury, her need for time off,

17   pain in her back, and limits on her physical ability, J. Crew did nothing to accommodate her.  *Id.*

18   ¶¶ 11–17.  She left the store in November 2014 when the pain became unbearable.  *Id.* ¶ 18.

19          A few weeks before Smith began working for J. Crew in 2009, she filled out and

20   signed a job application.  Scardigli Decl., Ex. A, at 2, ECF No. 6-2.  Just above her signature are

21   two paragraphs of text, which include the following sentences:

22              I understand that J. Crew Group, Inc. and all plan administrators
                shall have the maximum discretion permitted by law to administer,
23              interpret, modify, discontinue, enhance, or otherwise change all
                policies, procedures, benefits, or other terms or conditions of
24              employment.  No representative or agent of J. Crew Group, Inc. has
                the authority to enter into any agreement for employment for any
25              specified period of time or to make any change to any policy,
                procedure, benefit, or other term or condition of employment other
26              than in a document approved by the Director of Human Resources,
                or to make any agreement contrary to the foregoing.
27

28   *Id.*

2

After Smith's transfer to the Napa Valley store, in September 2013, J. Crew "rolled out arbitration agreements to all of its California associates."  Johnson Decl. ¶ 3, ECF No. 5-17.  Accompanying the agreements was a letter "from Lynda Markoe, the Executive Vice President of Human Resources, setting forth the methods available at the company for resolving conflicts and issues within the organization, and explaining the new arbitration program."  *Id.* ¶ 5.  Smith signed a document titled "Mutual Agreement to Arbitrate Claims" "governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.)."  Opatowsky ¶ 6; *id.* Ex. M, ECF No. 5-16.  The document provides, in relevant part, "that any and all disputes or claims . . . shall be decided through arbitration and not by way of court or jury trial . . . ."  *Id.* Ex. M, at 4.  By its terms, the agreement "applies to any dispute, past, present, or future, arising out of or related to Associate's [Smith's] application and hiring, employment tenure, and/or separation of employment with the Company [J. Crew Group, Inc. and H.F.D. No. 55, Inc.] and survives after the employment relationship ends."  *Id.*  As examples of claims governed by the agreement, it lists "claims related to the employment relationship but arising after that relationship ends; claims for wages or other compensation due, overtime, breaks and rest periods; . . . tort or statutory claims for harassment, retaliation and discrimination; and any claims for violation of any . . . state . . . law, statute, regulation, or ordinance," except in certain circumstances not relevant here.  *Id.*  The agreement also provides, in all capital letters, that Smith waives any right to assert or arbitrate a "representative action," but provides that "this Representative Action Waiver may be severed if it would otherwise make this Agreement unenforceable in any action brought under a private attorneys general law, and following severance the representative action may be brought in a court of law."  *Id.* at 5–6.

J. Crew claims that an employee is not required to agree to arbitrate, as spelled out in the agreement: "Arbitration is not a mandatory condition of . . . employment . . . and an Associate may opt out and not be subject to" the arbitration agreement.  *Id.* Ex. M, at 5.  The arbitration agreement allows an Associate to opt out of arbitration within thirty days of signing the proposed arbitration agreement by sending an email or letter.  *Id.*  It assures the employee, "An Associate who timely opts out will not receive any negative employment action as a result of

3

1    that decision." *Id.* J. Crew has filed the declaration of its Project Manager for Human Resources,

2    who was responsible for managing opt-outs. Opatowsky Decl. ¶ 4. She declares that she does

3    not "relay that information [an employee's choice to opt out] to Store Directors or anyone in store

4    or field operations," and J. Crew keeps "store and field operations completely out of the fold as it

5    relates to which associates opted out of the arbitration agreement." *Id.*

6           Smith signed the arbitration agreement and did not later opt out of arbitration. *Id.*

7    ¶ 6. The agreement she signed also bears the signature of Lynda Markoe, "Executive Vice

8    President, Human Resources" of J. Crew Group, Inc. *Id.* Ex. M, at 6. It does not bear the

9    signature of the "Director of Human Resources" or otherwise evidence that person's approval.

10           Despite Smith's signing the agreement to arbitrate, on May 8, 2015, she filed the

11    complaint in this case in Solano County Superior Court. Compl. at 1. J. Crew removed the case

12    to federal court on June 16, 2015 on the basis of federal diversity jurisdiction. ECF No. 1. Smith

13    alleges employment law claims under the California Fair Employment and Housing Act (FEHA),

14    Cal. Gov't Code § 12940, for disability discrimination, failure to accommodate, failure to engage

15    in an interactive process, retaliation, and failure to prevent discrimination, harassment, and

16    retaliation. Compl. ¶¶ 30–59. She alleges claims under several sections of the California Labor

17    Code and the applicable Industrial Welfare Commission (IWC) Wage Order for meal and rest

18    break violations, recordkeeping failures, failure to pay timely compensation and to pay wages

19    upon termination, and for retaliation. *Id.* ¶¶ 60–117. Smith also alleges unfair business practices

20    under California Business and Professions Code section 17200. *Id.* ¶¶ 118–121. And she brings

21    representative claims under the California Private Attorney Generals Act (PAGA), California

22    Labor Code section 2698, *et seq.* Compl. ¶¶ 21–29. She seeks damages, injunctive relief,

23    statutory penalties, pre- and post-judgment interest, attorneys' fees, and costs. *See id.* at 41–42.

24           On July 28, 2015, J. Crew filed the pending motion to compel arbitration of each

25    of Smith's individual claims and for dismissal of her PAGA claims. ECF No. 5. Smith opposes

26    the motion on two grounds. First, she argues the arbitration agreement alters a "policy,

27    procedure, benefit, or other term or condition of [her] employment" but was not "approved by the

28    Director of Human Resources," as required by her 2009 application. Opp'n 5–7, ECF No. 6.

1    Second, she argues that even if the arbitration agreement is enforceable, it cannot apply to her

2    PAGA claims, because under California law, the waiver of a PAGA claim is contrary to public

3    policy.  *Id.* at 8–10.

4           J. Crew replied.  ECF No. 7.  In response to Smith's first argument, it concedes the

5    2009 agreement is valid, but points to the 2013 arbitration agreement's integration clause, which

6    provides that the arbitration agreement "is the full and complete agreement relating to the formal

7    resolution of employment-related disputes."  *Id.* at 3 (quoting Opatowsky Decl. Ex. M, at 6).

8    Because the arbitration agreement is an integrated agreement, J. Crew contends, the 2009

9    agreement is inadmissible parol evidence.  *Id.* at 3–4.  Even assuming the 2009 employment

10   agreement is valid and admissible, however, J. Crew argues its language supports enforcement of

11   the arbitration agreement.  *Id.* at 4–6.  In response to Smith's second argument, J. Crew argues

12   that the Federal Arbitration Act (FAA), 2 U.S.C. § 1 *et seq.*, preempts any contrary California

13   law.  Reply at 6–9.  Should the court disagree, J. Crew requests the PAGA claims be stayed

14   pending arbitration of Smith's individual claims.  *Id.* at 9–10.

15          As noted above, the court heard arguments on J. Crew's motion on September 3,

16   2015.  ECF No. 8.  At the hearing, the court and counsel discussed J. Crew's argument that the

17   2013 arbitration agreement was an integrated agreement and whether this barred consideration of

18   the 2009 agreement as parol evidence.  Smith argued for the first time that California Code of

19   Civil Procedure section 1856(f) allows consideration of the 2009 agreement as evidence that the

20   2013 arbitration agreement is invalid.  At the conclusion of the hearing, the court invited both

21   parties to address any matter not covered by the briefing or the previous discussion.  *Id.*  J. Crew

22   declined to make any further argument, did not request supplemental briefing, and agreed the

23   motion could be submitted for decision.

24          On September 9, 2015, J. Crew filed a supplemental brief in support of its motion,

25   requesting leave to do so in the same filing.  ECF No. 9; *see* Standing Order 4, ECF No. 2-1 ("No

26   supplemental briefs shall be filed without prior leave of court.").  The proposed supplemental

27   brief addresses section 1856(f).  The same day, plaintiff Sabrina Smith objected and requested the

28   court disregard the supplemental brief.  ECF No. 10.  J. Crew had an opportunity to address

1    section 1856(f) at hearing and declined to request supplemental briefing until it filed the proposed

2    supplement.  The supplemental brief is STRICKEN.[1]

3    II.    LEGAL STANDARD

4            Congress enacted the Federal Arbitration Act, the FAA, "in response to

5    widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*,

6    563 U.S. 333, 339 (2011).  The FAA provides that "arbitration agreements generally shall be

7    valid, irrevocable, and enforceable." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564 (9th

8    Cir. 2014) (citations and internal quotation marks omitted).  Section two of the FAA is its

9    "primary substantive provision," *Concepcion*, 563 U.S. at 339 (citation omitted): "A written

10   provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a

11   controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable,

12   and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

13   contract."  9 U.S.C. § 2.

14           Section 4 of the FAA allows district courts to hear motions to compel arbitration.

15   9 U.S.C. § 4.  Generally, in deciding whether to compel arbitration, a court determines two

16   "gateway" issues: (1) whether the parties agreed to arbitrate; and (2) whether their agreement

17   covers the dispute. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam*

18   *v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  The party moving to compel arbitration

19   bears the burden on each of these elements. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d

20   1320, 1323 (9th Cir. 2015).

21           The party opposing arbitration may argue the agreement is unenforceable on the

22   basis of any "'generally applicable contract defenses, such as fraud, duress, or

23   unconscionability,'" but not "defenses that apply only to arbitration." *Concepcion*, 563 U.S. at

24   343 (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  After all, "'a

25   party cannot be required to submit to arbitration any dispute which he has not agreed so to

26   submit.'" *Knutson*, 771 F.3d at 565 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav.*

27

28   ---

[1]   Even if the court considered the brief, the court concludes it would not alter the
decision here.

6

1    *Co.*, 363 U.S. 574, 582 (1960)).  A court may therefore declare an arbitration agreement

2    unenforceable when enforcement would contravene a state's law, but only as long as that state

3    law is not preempted by the FAA.  *See Concepcion*, 563 U.S. at 343.  Stated simply, "[w]hen

4    state law prohibits outright the arbitration of a particular type of claim, the analysis is

5    straightforward: The conflicting rule is displaced by the FAA."  *Id.* at 341.

6            In considering a motion to compel arbitration, the court applies a standard similar

7    to that under Federal Rule of Civil Procedure 56 on summary judgment.  *Concat LP v. Unilever,*

8    *PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004); *see also Cox v. Ocean View Hotel Corp.*,

9    533 F.3d 1114, 1119 (9th Cir. 2008) ("[D]enial of a motion to compel arbitration has the same

10   effect as a grant of partial summary judgment denying arbitration . . . .");  *Greystone Nevada, LLC*

11   *v. Anthem Highlands Cmty. Ass'n*, 549 F. App'x 621, 623 (9th Cir. 2013) (reversing an order

12   compelling arbitration where the opposing party had been afforded no opportunity to present

13   evidence and argument).  The party opposing arbitration receives the benefit of any reasonable

14   doubts and the court draws reasonable inferences in that party's favor, and only when no genuine

15   disputes of material fact surround the arbitration agreement's existence and applicability may the

16   court compel arbitration.  *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d

17   1136, 1141 (9th Cir. 1991) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51,

18   54 (3d Cir. 1980)); *Concat*, 350 F. Supp. 2d at 804.

19          Nevertheless, the decision to compel arbitration is mandatory if the requirements

20   are met, not discretionary, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985), and

21   federal law favors arbitration agreements, *Moses H. Cone Memorial Hosp. v. Mercury Constr.*

22   *Corp.*, 460 U.S. 1, 24–25 (1983).

23   III.    <u>DISCUSSION</u>

24          Several factual questions are subject to no genuine dispute.  The parties do not

25   dispute that the 2013 arbitration agreement exists and covers the complaint's allegations, which

26   all stem from Smith's employment at J. Crew.  Neither do they dispute that the 2009 agreement

27   exists and is a valid agreement.  Nor is there any dispute that the 2013 arbitration agreement is

28   governed by the FAA.  This leaves the court with two questions:  First, does the 2009 agreement

1   require the 2013 arbitration agreement to be signed by the "Director of Human Resources"?  And

2   second, if the 2013 arbitration agreement may be enforced, was Smith's waiver of her PAGA

3   representative claims effective?  The court addresses each in turn.

4       A.      "Approved by the Director of Human Resources"

5               1.      2009 Agreement

6               J. Crew does not contest the validity of the 2009 agreement; rather, it argues it is

7   inapplicable because the 2013 arbitration agreement embodies its entire agreement with Smith

8   regarding dispute resolution, rendering the 2009 agreement irrelevant and inadmissible.  This is a

9   diversity action, so, in interpreting the contracts at issue, the court applies California law.  *See*

10  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).  Contract interpretation is a

11  question of law.  *In re Tobacco Cases I*, 186 Cal. App. 4th 42, 47 (2010).  Normally a contract's

12  written terms alone control its interpretation: "when parties enter an integrated written agreement,

13  extrinsic evidence may not be relied upon to alter or add to the terms of the writing."  *Riverisland*

14  *Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1174 (2013) (citing

15  Cal. Civ. Proc. Code § 1856 and Cal. Civ. Code § 1625).  This rule is commonly called the parol

16  evidence rule, though it is a rule of substantive law, not of procedure.  *Casa Herrera, Inc. v.*

17  *Beydoun*, 32 Cal. 4th 336, 343 (2004).  "It is founded on the principle that when the parties put all

18  the terms of their agreement in writing, the writing itself becomes the agreement."  *Riverisland*,

19  55 Cal. 4th at 1174.  Because a contract's "written terms supersede statements made during the

20  negotiations," evidence other than those written terms, "extrinsic evidence," is "*irrelevant*, and

21  cannot be relied upon."  *Id.* (emphasis in original); *see also* Cal. Civ. Code § 1625 ("The

22  execution of a contract in writing . . . supersedes all the negotiations or stipulations concerning its

23  matter which preceded or accompanied the execution of the instrument.").

24              The parol evidence rule applies only to "an integrated written agreement."

25  *Riverisland*, 55 Cal. 4th at 1174.  A written agreement is "integrated" or is an "integration" if it is

26  "a complete and final embodiment of the terms of an agreement," *Masterson v. Sine*, 68 Cal. 2d

27  222, 225 (1968), or in other words, if it is "intended by the parties as a final expression of their

28  agreement," Cal. Code Civ. Proc. § 1856(a).  Whether a written contract is an integration is a

1   question of law.  *Id.* § 1856(d); *Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1434

2   (1992).  A court considers several factors when it must determine whether an agreement is an

3   integration: (1) the presence of an integration clause; (2) the contract's language and apparent

4   completeness or incompleteness; (3) if a party argues another contract exists, whether that

5   agreement's terms contradict those of the written contract; (4) whether the alleged additional

6   agreement would naturally be made as a separate agreement; and (5) whether extrinsic evidence

7   might confuse the jury.  *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995) (citing

8   *McLain v. Great Am. Ins. Cos.*, 208 Cal. App. 3d 1476, 1484 (1989)); *Alling*, 5 Cal. App. 4th at

9   1434.

10         Here, the court concludes the 2013 agreement is an integration; its plain language

11   leaves no doubt the parties intended it to delineate their entire agreement "relating to the formal

12   resolution of employment-related disputes."  Opatowsky Decl. Ex. M, at 6.  At the same time, this

13   language does not support the conclusion J. Crew advocates, which would extend the arbitration

14   agreement's effect to the entire employment relationship.  The contract is titled "Mutual

15   Agreement to Arbitrate Claims," not "Mutual Agreement of Employment."  *Id.* at 4.  It describes

16   only a procedure "relating to the formal resolution of employment-related disputes" and no other

17   aspects of the employment relationship.  Some separate contract would be natural and expected.

18   At hearing, J. Crew agreed.  The 2009 agreement, which contradicts none of the provisions of the

19   2013 agreement, is therefore admissible and relevant.  *See also* Cal. Code Civ. Proc. § 1856(f)

20   ("Terms set forth in a writing intended by the parties as a final expression of their agreement with

21   respect to the terms included therein may not be contradicted by evidence of a prior agreement or

22   of a contemporaneous oral agreement. . . . [But] [w]here the validity of the agreement is the fact

23   in dispute, this section does not exclude evidence relevant to that issue.").

24         This conclusion leaves for determination only the meaning and effect of the words

25   in the 2009 agreement.  "The language of a contract is to govern its interpretation, if the language

26   is clear and explicit, and does not involve an absurdity."  Cal. Civ. Code § 1638.  "Words in a

27   contract are given their ordinary meaning absent evidence the parties intended to use those words

28   in a different sense."  *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 116 Cal. App. 4th

1253, 1263 (2004); *see also AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 822 (1990) (looking to the meaning of words in their "ordinary and popular sense" with "the meaning a layperson would ascribe").  If the ordinary meaning is not perfectly clear, the dictionary definition may sometimes prove helpful.  *See, e.g.*, *Baker v. Nat'l Interstate Ins. Co.*, 180 Cal. App. 4th 1319, 1340 (2009).

The court cannot endorse J. Crew's interpretation of the language in the 2009 agreement in question here.  The relevant sentence lists two actions that "[n]o representative or agent of J. Crew Group, Inc. has the authority" to undertake "other than in a document approved by the Director of Human Resources": (1) "to enter into any agreement for employment for any specified period of time" and (2) "to make any change to any policy, procedure, benefit, or other term or condition of employment."  Scardigli Decl. Ex. A, at 2.  Neither may a representative or agent "make any agreement contrary to the foregoing."  *Id.*  In other words, J. Crew's representatives and agents may not change any "policy, procedure, benefit, or other term or condition of employment" unless the change is in a document "approved by the Director of Human Resources."  *Id.*  Neither may agents and representatives subvert this requirement by making some other agreement with an employee.  *Id.*

This conclusion does not conflict with the 2009 agreement's immediately preceding sentences, which caution that "J. Crew Group, Inc. and all plan administrators shall have the maximum discretion permitted by law to administer, interpret, modify, discontinue, enhance, or otherwise change all policies, procedures, benefits, or other terms or conditions of employment."[2] *Id.*  The most straightforward reading of the paragraph as a whole allows J. Crew maximum authority to change the conditions of Smith's employment in any document approved by the "Director of Human Resources."  *Id.*  In context, this limitation is sensible: the agreement instructs a prospective employee to rely on no changes except those in a document approved by the Director of Human Resources.  Moreover, the agreement warns a prospective employee of

---

[2] At hearing, Smith drew a distinction between, on the one hand, actions "J. Crew Group, Inc. and all plan administrators" have discretion to undertake and, on the other hand, actions a "representative or agent of J. Crew Group, Inc." may undertake.  Because this argument was addressed to the court for the first time in hearing and because the motion is denied without prejudice, the court does not reach it here.

1   J. Crew's discretion to change almost any aspect of her employment, but only in an official,

2   written document properly approved by the Human Resources Director.  In sum, the parties'

3   intent is evident from this plain language.  The applicant acknowledges J. Crew's broad discretion

4   and agrees she will rely on nothing but official promises, and in return she may disregard any

5   change not made in writing and approved by the Director of Human Resources.

6           The court disagrees that this interpretation reads the words "maximum discretion"

7   out of the agreement.  *See* Reply at 5.  J. Crew maintains its maximum allowable discretion, as

8   long as that discretion is exercised in the way the agreement provides, again, "in a document

9   approved by the Director of Human Resources."  *Id.*  Adopting J. Crew's reading would sweep

10  the "Director of Human Resources" provision under the rug: if some other person could approve

11  changes in the terms and conditions of employment, then J. Crew had no need originally to

12  specify that the "Director of Human Resources" must approve the changes.

13              2.        2013 Agreement

14          By requiring arbitration of workplace-disputes, the 2013 arbitration agreement

15  changed a "policy, procedure, benefit, or other term or condition of employment."  J. Crew does

16  not argue otherwise.  The arbitration agreement can be effective, then, only if "approved" by the

17  Director of Human Resources.  "To approve" may be synonymous with "to sign," but not

18  necessarily.  *See, e.g.*, Merriam-Webster's Dictionary, *available at* http://www.merriam-

19  webster.com (last visited Mar. 1, 2016) (defining approve: "to believe that something or someone

20  is good or acceptable[;] to officially accept"; and sign: "to write (your name) on something[;] to

21  write your name on (something) especially to show that you accept, agree with, or will be

22  responsible for something"); American Heritage Dictionary, *available at*

23  http://www.ahdictionary.com (last visited Mar. 1, 2016) (defining approve: "To consent to

24  officially or formally; confirm or sanction"; and sign: "To affix one's signature to," "To approve

25  or ratify (a document) by affixing a signature, seal, or other mark"); Black's Law Dictionary (9th

26  ed. 2009) (defining approve: "To give formal sanction to; to confirm authoritatively"; and sign:

27  "To identify (a record) by means of a signature, mark, or other symbol with the intent to

28  authenticate it as to an act or agreement of the person identifying it").  As a member of this

11

district's bankruptcy court has observed, "the plain meaning of 'to sign' includes acts other than the hand-writing of a name, [including] to approve or ratify". *In re Mendonca*, No. 05-91456, 2007 WL 474088, at *3 (Bankr. E.D. Cal. Feb. 9, 2007).  In other words, signing a document is one means of approving it, but not the only means.

J. Crew's Director of Human Resources did not sign the 2013 arbitration agreement, but because "approve" connotes a broader meaning than "sign," some other action may evidence approval.  With its motion J. Crew submitted declarations from J. Crew's "Project Manager, Human Resources," Opatowsky Decl. ¶ 2, and from the store director at the Napa Valley store, where Smith worked in 2013, Johnson Decl. ¶ 3.  Neither declaration directly attests to the approval of the Director of Human Resources, but both generally refer to the 2013 arbitration agreement as an official act of J. Crew Group, Inc., the defendant's parent corporation. *See, e.g.*, Opatowsky Decl. ¶ 2; Johnson Decl. ¶¶ 5, 10.  As noted, Smith's agreement was signed by the Executive Vice President, Human Resources.  Opatowsky Decl. Ex. M, at 6.  Strangely, in its reply brief, J. Crew declined to argue on the basis of this evidence that the Director of Human Resources approved the arbitration agreement.  At hearing, J. Crew took the position that no evidence or argument regarding approval was necessary.

On its pending motion, of course, J. Crew bears the burden to show plaintiff's claims are subject to arbitration.  *Ashbey*, 785 F.3d at 1323.  And at this stage the court views the evidence in the light most favorable to the non-moving party.  *Three* Valleys, 925 F.2d at 1141; *Concat*, 350 F. Supp. 2d at 804.  J. Crew's motion therefore cannot be granted.  J. Crew has not submitted evidence to show the Director of Human Resources approved the arbitration agreement, let alone that J. Crew even employed a Director of Human Resources or who that person was.  It argues only that the Executive Vice President of Human Resources, who signed the agreement, supervised the Director of Human Resources.  But again it has submitted no evidence to show this is indisputably true, and no evidence to show that the approval of the Executive Vice President of Human Resources was tantamount to approval by the Director of Human Resources.

12

1        The motion to compel is denied, but without prejudice.  In the event J. Crew refiles

2   the motion, the court addresses status of briefing with respect to the arbitration agreement's

3   representative action waiver below.

4       B.    Waiver of PAGA Claims

5        The California Supreme Court has held that where "an employment agreement

6   compels the waiver of representative claims under the PAGA, it is contrary to public policy and

7   unenforceable as a matter of state law."  *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 383

8   (2014), *cert. denied*, 135 S. Ct. 1155 (2015).  That decision binds this court.  *See Wainwright v.*

9   *Goode*, 464 U.S. 78, 84 (1983) ("[T]he views of the state's highest court with respect to state law

10  are binding on the federal courts."); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889

11  (9th Cir. 2010) ("We are bound by pronouncements of the California Supreme Court on

12  applicable state law.").

13       The FAA, as federal law, preempts any state law that frustrates its objectives.

14  *Concepcion*, 563 U.S. at 343.  At the time the parties briefed and argued this motion, no binding

15  authority addressed whether federal law preempted the *Iskanian* rule.  But on September 28,

16  2015, the Ninth Circuit issued its opinion in *Sakkab v. Luxottica Retail North America, Inc.*, 803

17  F.3d 425 (9th Cir. 2015).  In that case, the circuit court concluded that "the *Iskanian* rule does not

18  stand as an obstacle to the accomplishment of the FAA's objectives, and is not preempted."  *Id.*

19  at 427.  Because federal law does not preempt the *Iskanian* rule, Smith's waiver of her right to

20  bring a PAGA action is not enforceable.  The motion to arbitrate therefore cannot be granted to

21  enforce that clause of the agreement, and the motion to dismiss that claim must be denied.

22       However, Smith's PAGA claims appear to overlap significantly with her other

23  claims, which may be subject to arbitration: Smith can assert no PAGA claim unless she is an

24  "aggrieved employee," *Amalgamated Transit Union, Local 1756, AFL-CIO v. Super. Ct.*, 46 Cal.

25  4th 993, 1001 (2009), that is, unless she is a person "against whom one or more of the alleged

26

27

28

1   violations was committed," Cal. Lab. Code § 2699(c).  Section 3 of the FAA also provides for a

2   mandatory stay of civil court proceedings in some instances.  *See* 9 U.S.C. § 3.[3]

3          Because J. Crew requested a stay for the first time in its reply brief, *see* Reply at

4   9–10, ECF No. 7, and because the court did not pose the question to her at hearing, Smith has had

5   no opportunity to address the propriety of a stay should arbitration be compelled.  The court

6   therefore reserves the question of a stay for consideration in conjunction with any renewed

7   motion to compel arbitration.

8   IV.    CONCLUSION

9          J. Crew's supplemental brief is STRICKEN.  The motion to compel arbitration is

10  DENIED without prejudice.  Any renewed motion shall be heard no later than May 6, 2016.  The

11  motion to dismiss is DENIED with prejudice.  This order resolves ECF No. 5.

12         IT IS SO ORDERED.

13  DATED:  March 7, 2016.

15                                                  _____
16                                                  UNITED STATES DISTRICT JUDGE

_____

[3] That section provides as follows: "If any suit or proceeding be brought in any of the
courts of the United States upon any issue referable to arbitration under an agreement in writing
for such arbitration, the court in which such suit is pending, upon being satisfied that the issue
involved in such suit or proceeding is referable to arbitration under such an agreement, shall on
application of one of the parties stay the trial of the action until such arbitration has been had in
accordance with the terms of the agreement, providing the applicant for the stay is not in default
in proceeding with such arbitration."